397 P.2d 632

**STATE of Arizona, Appellee,**

v.

**Ruben BALDERRAMA, Appellant.**

**No. 1303.**

Supreme Court of Arizona.

En Banc.

Dec. 23, 1964.

Robert W. Pickrell, Atty. Gen., Samuel J. Macaluso, Asst. Atty. Gen., and Charles N. Ronan, Maricopa County Atty., for appellee.

Peterson, Estrada & Matz, Phoenix, for appellant.

BERNSTEIN, Justice.

Appellant was convicted in a trial by a jury in Maricopa County Superior Court of the crimes of assault with a deadly weapon, A.R.S. § 13–249, and leaving the scene of an accident, A.R.S. § 28–661. Appellant appeals from the conviction of assault with a deadly weapon but does not appeal from the conviction for leaving the scene of an accident.

Appellant's automobile struck a 10 year old boy at the intersection of 18th Street and Hadley Street in the City of Phoenix at about 4:00 o'clock in the afternoon. The boy had just left a school bus, and was crossing the street. There is some dispute in the evidence as to whether he was actually struck by appellant's car, or tripped in an effort to avoid being hit by appellant's car. In any event, his injuries consisted of cuts he received when he struck the pavement. After being treated at the hospital he was immediately released. The testimony of state witnesses was that appellant was drunk. He was driving between 35 and 40 miles per hour, and the State contends that this was an imprudent speed under the circumstances of this case.

The issue raised by this appeal is whether a conviction for assault with a deadly weapon, A.R.S. § 13–249, can be sustained in a case involving a motor vehicle where the State relies on allegations of wilful and gross negligence as a substitute for the specific intent to do harm as required under the statute. The statute provides:

"§ 13–249. Assault with deadly weapon or force; punishment.

"A person who commits an assault upon the person of another with a deadly weapon or instrument, or by any means or force likely to produce great bodily injury, shall be punished by imprisonment in the state prison for not

less than one nor more than ten years, by a fine not exceeding five thousand dollars, or both."

Appellant was sentenced to from 2 to 5 years for assault with a deadly weapon.

In previous cases in this court the "deadly weapon" involved has been some sort of instrument intended to be used as a weapon. In State v. Cumbo, 96 Ariz. 385, 396 P.2d 11, it appears that the victim was struck by a gun. The gun was actually fired in Gonzalez v. State, 21 Ariz. 385, 188 P. 872; Wiley v. State, 19 Ariz. 346, 170 P. 869, L.R.A.1918D, 373; Hann v. State, 30 Ariz. 366, 247 P. 129; Tamborino v. Territory, 7 Ariz. 194, 246, 62 P. 693, 64 P. 492; Riley v. State, 50 Ariz. 442, 73 P.2d 96; Bellamack v. State, 37 Ariz. 344, 294 P. 622; West v. Territory, 4 Ariz. 212, 36 P. 207; Richardson v. State, 34 Ariz. 139, 268 P. 615; Lee v. State, 27 Ariz. 52, 229 P. 939; State v. Voeckell, 69 Ariz. 145, 210 P.2d 972. The assault was made with guns which were not fired in Territory v. Gomez, 14 Ariz. 139, 125 P. 702, 42 L.R.A., N.S., 975; Ryan v. Territory, 12 Ariz. 208, 100 P. 770; State v. Aldrich, 75 Ariz. 53, 251 P.2d 653. In State v. Mace, 86 Ariz. 85, 340 P.2d 994, a razor was used. In Midkiff v. State, 29 Ariz. 523, 243 P. 601; Dunn v. State, 50 Ariz. 473, 73 P.2d 107, and Caston v. State, 24 Ariz. 593, 211 P. 866, a knife was used.

The Arizona deadly weapon statute is derived from California. The only change since territorial days has been to increase the maximum penalty from five to ten years. The corresponding statute in California is West's Ann.Pen.Code § 245. An examination of the cases cited in the annotation to that section shows that California also has, in practice, with a few possible exceptions, restricted the meaning of "deadly weapon" to its traditional and obvious one.

People v. Peak, 66 Cal.App.2d 894, 153 P.2d 464, cited by the State was a case in which the defendant shot and seriously wounded his daughter and her husband with a shotgun during a family dispute over the attempted removal of furniture they owned from a house owned by defendant. No automobile was involved. The reasoning of the opinion must be read in the light of the facts before the court.

The situation in which an automobile is properly considered a deadly weapon is illustrated by People v. Flummerfelt, 153 Cal.App.2d 104, 313 P.2d 912. In upholding a conviction under Calif.Pen.Code § 245, (the equivalent of A.R.S. § 13–249), the court after stating facts showing an argument between the parties, said at page 913:

"Defendant, with Kolb in view, started his automobile from a stationary position, accelerated it, and steered it directly toward Kolb. He traveled about 20 feet and struck Kolb. It may be

reasonably inferred from this evidence that defendant, with the present ability, unlawfully attempted to commit a violent injury on Kolb. All of the essential elements of assault were proved. The evidence is ample to show that defendant had the intention and the present ability to commit a violent injury on the person of another."

People v. Goolsby, 284 Mich. 375, 279 N.W. 867, involved a "dangerous weapon" statute rather than a "deadly weapon" statute. The agreed facts were:

"* * * Defendant, when asked by the officer to stop, got out of his automobile, used some profanity to the officer, got back into his automobile and, against the wishes of the officer, he deliberately stepped on the gas and told the officer to get out of the way. Without noticing whether the officer did or did not get out of the way, he started across the intersection of the streets, against the signal and against the orders of the officer. The automobile struck the officer, knocked him down and the left rear wheel of the automobile ran over his right foot at the instep, but without breaking any bones."

These facts would constitute an assault under any form of statute. The situation is similar to that in the most recent California case, People v. Claborn, Cal.App., 36 Cal.Rptr. 132, where:

"* * * Defendant's car had been described to the officer; he recognized it and lighted his red spotlight as an indication that defendant should stop. The defendant, however, continued his course and suddenly, when 75 feet separated the two cars, altered his course, aiming his vehicle directly at the officer's car. The officer swerved his car to the extreme right side of the roadway and halted. There was a headon collision during the last few moments prior to which the officer observed defendant appear to clench his teeth and tighten his grip on the steering wheel. Immediately after the collision, defendant left his car, shouted, 'You son-of-a-bitch, I didn't kill you this way, but I will kill you now,' and then physically attacked the officer who had also gotten out of his car. Defendant was in a rage and it took three men, including the officer, to subdue and handcuff him."

In all such situations referred to above a prosecution under A.R.S. § 13–249 would be proper. There was evidence of an actual intent to harm, and the vehicles were aimed, just as a shotgun is aimed. The element of actual intent to use the automobile as a deadly weapon, absent in this case, was the essential element in all of the above referred to cases.

It is true that some states use the assault with a deadly weapon statute to try automobile accidents, especially those involving drunken driving or other serious offenses. Among these is Florida, Williamson v. State, 92 Fla. 980, 111 So. 124, 53 A.L.R. 250. Williamson was influenced by the fact that Florida held automobiles generally to be "dangerous instrumentalities", Southern Cotton Oil Co. v. Anderson, 80 Fla. 441, 86 So. 629, 16 A.L.R. 255. We do not regard Williamson as controlling in states which do not class automobiles as "dangerous instrumentalities". Florida classes automobiles with loaded firearms for all purposes. Southern Cotton Oil Co., supra.

The Oklahoma Court of Criminal Appeals has approved the use of that state's assault with a dangerous weapon statute in drunken driving cases. Beck v. State, 73 Okl.Cr. 229, 119 P.2d 865. The Oklahoma dangerous weapon statute is broader in scope than the Arizona deadly weapon statute, though like the Arizona statute it was adopted in territorial days before the invention of the automobile. The Oklahoma court also classified the automobile as a "dangerous instrumentality", and relied on Williamson, supra. The Oklahoma rule is not applicable under our statute.

In North Carolina, evidence of speeding or of driving on the wrong side of the road will support a conviction for an assault with a deadly weapon. State v. Sudderth, 184 N.C. 753, 114 S.E. 828, 27 A.L.R. 1180. The North Carolina rule is based upon the assumption that "[w]here the facts of a case of homicide constitute the crime of manslaughter, the same state of facts will make an assault if no killing ensues." This view disregards the fact that historically, manslaughter has always covered *unintentional* killings, State v. Barnett, 218 S.C. 415, 63 S.E.2d 57.[1] Assault with a deadly weapon, at common law and under statutes such as Arizona's which are enactments of the common law, is malum in se, and in the class of crimes in which *intent* must be proved. See State v. Budge, 126 Me. 223, 137 A. 244, 53 A.L.R. 241.

Illinois previously permitted trial of automobile accidents caused by drunken or reckless driving under the assault with a deadly weapon statute. People v. Clink, 216 Ill.App. 357; People v. Benson, 321 Ill. 605, 152 N.E. 514, 46 A.L.R. 1056. Illinois no longer follows these cases and now holds with other states that an automobile, though frequently used innocently or negligently so as to be likely to produce death

---

1. The Uniform Act Regulating Traffic on Highways provisions relating to negligent homicide, discussed in Barnett in addition to the common law rules, were adopted in Arizona, A.R.S. § 28–691, and have been superseded by A.R.S. §§ 13–456, 13–457 enacted in 1957.

or bodily injury; cannot be said, because of such use, to have become a deadly weapon within the meaning of the criminal law, People v. Cash, 326 Ill. 104, 157 N.E. 76, 79. See also State v. Clark, 196 Iowa 1134, 196 N.W. 82, 84; Huntsinger v. State, 200 Ga. 127, 36 S.E.2d 92, 97.

People v. Cash, supra, illustrates the tragic results of the adoption of the rule that drunken drivers may be prosecuted for the felony of assault with a deadly weapon as held by People v. Clink, supra, which the State urges us to follow. Cash was a police officer who shot and killed the wife of an alleged drunken driver, who disregarded the officer's shout to stop. He was convicted of manslaughter. Cash defended on the ground that he shot to prevent the escape of a fleeing felon. This would have been the case if the assault with a deadly weapon statute were applicable. The court held that instructions on this theory of defense were properly denied. Jones v. Shears, 143 Cal.App.2d 360, 299 P.2d 986 arose from an officer's shooting down a motorist in mistaken reliance on the view that he was making an arrest for the felony of assault with a deadly weapon under Cal.Penal Code § 245. The court held, in a civil suit against the officer, that the arrest would have to have been for a violation of the motor vehicle code which did not give the officer a right to shoot the motorist. In Jones the motorist was not drunk, but his car had swerved across the center line when it hit a bump in the road.

In Brimhall v. State, 31 Ariz. 522, 255 P. 165, 53 A.L.R. 231, this court upheld the conviction for "aggravated assault" under A.R.S. § 13–245 of a driver who drove at night without headlights on the wrong side of the road, and at an unlawful speed. The conviction was under sub-section five, which provides that an assault is aggravated when serious bodily injuries are inflicted on the person assaulted. The State urges us to apply the rule of Brimhall that actual intent need not be proven, to A.R.S. § 13–249. In this dissent in Brimhall, Justice Lockwood said:

" * * * It is universally held in the English-speaking jurisdictions that no act alone is a crime unless accompanying it there is either an intent to do the specific act, or else criminal negligence which causes it. I think it is almost as well established, and with equal reason, that criminal neglect can supply the place of the intent only when the legislative power has expressly so provided. The Legislature can, and frequently does, for reasons of public policy, make a specific act criminal when it is negligently but not

intentionally done. In view of the increasing use of powerful machinery such as automobiles by persons who are but little qualified either temperamentally, mentally, or physically to control them properly, it would no doubt be wise for the Legislature to provide, in the interests of public safety, that any person who operated such machinery was not only civilly but criminally responsible for his negligence. A statute to this effect would be specific and involve nothing beyond the particular case under consideration."

There is today no necessity for the courts to torture statutes to cover the modern problems presented by the automobile. If present laws specifically dealing with automobiles are inadequate, and additional criminal sanctions are needed, the remedy lies with the legislature. Brimhall v. State, supra, is overruled insofar as it is inconsistent with this opinion. Appellant's motion for a directed verdict should have been granted.

The judgment of the lower court is reversed and the case dismissed.

UDALL, C. J., LOCKWOOD, V. C. J., and STRUCKMEYER and SCRUGGS, JJ., concurring.