STATE of Maine

v.

David J. MAIR.

Supreme Judicial Court of Maine.

Submitted on Briefs Oct. 11, 1995.

Decided Jan. 22, 1996.

Andrew Ketterer, Attorney General, Linda Conti, Assistant Attorney General, Augusta, for the State.

Allan E. Lobozzo, Auburn, for Defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, RUDMAN, DANA and LIPEZ, JJ.

CLIFFORD, Justice.

David J. Mair appeals from a judgment of conviction for robbery, 17-A M.R.S.A. § 651(1)(B)(2) (1983) (Class A), entered after a jury trial in the Superior Court (Androscoggin County, *Delahanty, C.J.*). Mair contends that the trial court erred in the admission of certain evidence, improperly denied his motion for a mistrial, and erred in instructing the jury that possession of recently stolen property may give rise to an inference that the possessor stole the property. Finding no error or abuse of discretion, we affirm the judgment.

There was evidence presented at Mair's trial that Mair and Dan McLeod,[1] after consuming large quantities of alcohol and smoking marijuana and hashish with Wayne Chandler, a mentally disabled man who resided in a homeless shelter, led Chandler down an alley in downtown Lewiston, where they attacked him and stole his wallet (containing the proceeds from a recently-cashed Social Security check), his radio, and his sunglasses.[2]

## I.

Mair contends that the court erred in allowing Chandler to testify regarding Mair's actions. That testimony occurred during the State's direct examination of Chandler:

Q. And you say that [Mair] was applying for a job, or you were applying for a job?

A. No. I was just helping him out.

Q. Was he applying for a job there?

A. Yes.

Q. And after you went to the slippers—Supreme Slipper, what happened next after that day?

A. *He went upstairs and took the adding machine.*

Def. Cnsel: Your Honor, I'd like to object.

The Court: Basis?

Def. Cnsel: If I could approach sidebar.

The State: I'll withdraw that question, Your Honor.

The Court: Okay. Fine.

Q. What I'm asking is: What—did you go someplace after you and Mr. Mair went to the Supreme Slipper? Did you go someplace else that day?

A. *Yeah. We went to the—what do you call the place where you trade your stuff in?*

Q. *Pawn shop?*

A. *Yup.*

Def. Cnsel: Your Honor, again, like [sic] to object to this line of questioning.

The Court: Overruled.

(Emphasis added.) Mair contends that this entire exchange was inadmissible and should have been stricken from the record by the court. The State contends that because Mair did not move to strike from the record Chandler's response about Mair taking the adding machine, it must be reviewed under an obvious error standard, and that there is no obvious error. The State also contends that Chandler's reference to Mair going to a pawn shop was admitted as background information on the chronology of events on the day of the robbery.

■ We agree with the State that Mair's failure to move to strike the testimony regarding the adding machine requires that we review the court's action only for obvious error.[3] We find none. The evidence regarding the pawn shop, when viewed in isolation, is relevant as chronological background infor-

---

1. Dan McLeod entered a plea of guilty to robbery pursuant to M.R.Crim.P. 11. At his Rule II hearing, he acknowledged as true the facts of the robbery recited by the State. This recitation included the fact that both McLeod and Mair had beaten and robbed the victim, Wayne Chandler. At Mair's trial, however, McLeod testified that he acted alone in robbing Chandler and that Mair had nothing to do with it.

2. Evidence also included testimony from Chandler, admissions made by Mair, incriminating

statements included in letters written by Mair, and that Chandler's radio, stolen in the course of the robbery, was found in Mair's room.

3. When an objection is made solely to the answer and not to the question, a motion to strike is essential to preserve the objection. 88 C.J.S. *Trial* § 133 (1955); Field & Murray, *Maine Evidence* § 103.3 at 1–14 (3d ed. 1994); *see* M.R.Evid. 103(a)(1).

mation. Considered in context, however, it may be reasonably inferred that the trip to the pawn shop was related to the adding machine that Mair had recently taken. Accordingly, Mair's objection to the pawn shop testimony, even though it was general and did not specify the reason for the objection, should have been sustained. In light of the prior reference to Mair taking the adding machine, the pawn shop evidence was inadmissible. Whatever minimal probative value such evidence had as background was substantially outweighed by the danger of unfair prejudice. *See* M.R.Evid. 403.

■ Although the trial court's admission of the pawn shop evidence was error, the error does not require us to vacate Mair's conviction. There was testimony from Chandler concerning the details of the robbery. Mair admitted to several people that he had committed the robbery and, in letters, made statements that were very incriminating. In addition, one of the stolen items was found in his room. In this trial that covered three days, it is highly probable that the references to Mair's visiting a pawn shop did not affect the verdict. Accordingly, the error was harmless. *State v. Francis,* 539 A.2d 213, 215 (Me.1988); M.R.Crim.P. 52(a).

## II.

■ Mair next contends that excerpts read to the jury from letters written by him to a friend should have been excluded. In the letters, Mair asks his friend to talk to the victim, Chandler, "about dropping the charges against [him]," requests that the friend testify that Mair was with her during the time the robbery took place, and asks her to talk with two other "friends" who could potentially testify in a way consistent with Mair's story.

■ Mair argues that the statements in the letters are not admissions because they are ambiguous and could have been written by an innocent man. Mair's contentions are unpersuasive. The excerpts read to the jury were properly admitted as admissions pursuant to M.R.Evid. 801(d)(2). Even if the statements could not be considered inculpatory, a "statement by a criminal defendant

need not be inculpatory to qualify as an admission.... The requirement that the statement, either by itself or in conjunction with proof of other facts and circumstances, tend[s] to prove guilt, is, analytically speaking, one of relevancy." Field & Murray, *Maine Evidence* § 801 at 8–19.1 (3d ed. 1994). "Any statement by a defendant in a criminal case which, in conjunction with proof of other facts and circumstances, tends to prove guilt is an admission." *State v. Jones,* 405 A.2d 149, 151 (Me.1979).

## III.

Mair also contends that the court improperly denied his motion for a mistrial made following the disclosure that three of the jurors had witnessed a television news story that mentioned Mair's name. After both sides had rested on the evening prior to the last day of the trial, a local television station ran a news story concerning the death of a man in Fryeburg. The man was Mair's father and the story mentioned that Mair was sought for questioning. The court questioned the jurors, three of whom admitted to having seen the story. The court and both attorneys interviewed each of those three jurors individually. Two of them could not remember any details of the story. The third juror stated that he remembered that the story had something to do with the death of Mair's father. All three stated that nothing they heard would affect their judgment in the case. Following the questioning of the jurors, Mair moved for a mistrial. The court designated the third juror, the one with the most knowledge of the story, as an alternate, and denied the motion for a mistrial. The third juror was excused prior to, and did not participate in, the deliberations of the jury that resulted in the guilty verdict.

■ Mair contends that the court should have granted a mistrial because the news story had to affect the impartiality of the jury. We review the denial of a motion for a mistrial for an abuse of discretion. *State v. Wright,* 662 A.2d 198, 201 (Me.1995).

When a jury's impartiality is questioned, the trial court should individually interview the jurors to ascertain whether each can remain impartial. The court's determina-

tion of whether a juror can remain impartial is entitled to substantial deference because of the trial court's ability to observe and to assess the juror's credibility.

*Id.* (citing *State v. Gilman,* 637 A.2d 1180, 1182 (Me.1994)).

■ Here, the court correctly interviewed the jurors, two of whom did not remember the substance of the news story, and determined that they could remain impartial. The third juror, who did know that the story concerned the death of Mair's father, did not participate at all in the jury's decision. The court acted well within its discretion in denying the mistrial.

## IV.

Finally, Mair contends that the court erred in instructing the jury pursuant to 17–A M.R.S.A. § 361 (1983).[4] Because Mair did not object, we review the instruction in the context of the entire charge to the jury to determine if it "constitutes highly prejudicial error tending to produce manifest injustice." *State v. Weisbrode,* 653 A.2d 411, 417 (Me. 1995) (citations omitted); *see also* M.R.Crim.P. 30(b). We conclude that it does not.

The entry is:

Judgment affirmed.

All concurring.

---

4. 17–A M.R.S.A. § 361 (1983) provides in pertinent part:
  **2.** Proof that the defendant was in exclusive possession of property that had recently been taken under circumstances constituting a violation of this chapter or of chapter 27 shall give rise to a presumption that the defendant is guilty of the theft or robbery of the property, as the case may be[.]